**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN COUNCIL OF THE BLIND on behalf of itself, its members, and others similarly situated, and MICHAEL GODINO, on behalf of himself and others similarly situated.<br><br>     Plaintiffs,<br><br>-against-<br><br>KEENWAWA, INC., d/b/a EATSA,<br><br>     Defendant. | No. 17-cv-2096<br><br>**COMPLAINT** |

## INTRODUCTION

1. This lawsuit seeks to end ongoing civil rights violations committed by Keenwawa, Inc., doing business as "Eatsa," against blind persons in New York City.

2. Eatsa boasts that it has revolutionized fast-casual dining by creating a completely automated, self-service dining experience in its restaurants. The new process is set up so that customers browse menu items and complete their orders using their mobile phones or touchscreen tablets inside Eatsa restaurants and then pick up their orders at cubbies when their name appears, without ever interacting with a waiter or a cashier. As its website explains, Eatsa seeks to "change fast food for the better, forever," and has been hailed as the future of the restaurant industry.[1] Upon opening, Eatsa's co-founder asserted that "by developing new

---

[1] *See, e.g.*, Claire Cain Miller, *Restaurant of the Future? Service With an Impersonal Touch*, N.Y. TIMES, Sept. 8, 2015, https://www.nytimes.com/2015/09/09/upshot/restaurant-of-the-future-service-with-an-impersonal-touch.html?_r=2; Amanda Little, *Quinoa is the New Big Mac*, THE NEW YORKER, Dec. 17, 2016, http://www.newyorker.com/tech/elements/quinoa-is-the-new-big-mac; *High-tech restaurant of the future*, CNNMoney, March 18, 2016, http://money.cnn.com/video/smallbusiness/2016/03/18/sstb-eatsa.cnnmoney.

technology to automate every aspect of the food experience, we are able to deliver a product with the best qualities of premium fast casual at a price point that is accessible to everyone."[2]

3.    Yet, because the self-service mobile applications, touchscreen tablets, and visually-marked cubbies Eatsa utilizes rely on exclusively visual displays and do not provide any form of audio output or tactile input, Eatsa's design is entirely inaccessible to blind customers.

4.    Blind[3] customers who seek to dine at Eatsa's restaurants do not have the benefit of Eatsa's core design promise that it offers "[n]o lines. No cashier. No nonsense" and is "engineered to get you in and out fast."  Instead, blind customers must secure the assistance of a sighted third party to utilize each step of Eatsa's self-service dining.

5.    Eatsa designed and implemented its inaccessible, self-service dining system despite the existence of readily available accessible technology that could have provided the audio output and tactile input blind customers need to be able to utilize Eatsa's mobile application, tablet ordering system, and cubby-based food pick-up system independently.

6.    Eatsa was founded by branding executives Scott Drummond and Tim Young who were recently named to the National Restaurant News Power List 2016, a "list of the most powerful people in foodservice" including "power players placing the industry on notice."[4]  The Nation's Restaurant News also named Eatsa as one of the most influential brands in the

---

[2] *San Francisco's eatsa Opens in Downtown San Francisco, Offering an Unprecedented, Fully-Automated Fast Food Experience*, PRNEWSWIRE, Aug. 31, 2015, http://www.prnewswire.com/news-releases/san-franciscos-eatsa-opens-in-downtown-san-francisco-offering-an-unprecedented-fully-automated-fast-food-experience-300134989.html.

[3] Plaintiffs use the word "blind" to describe individuals who, as a result of a visual impairment, use alternative techniques or assistive technology for tasks done visually by persons without a visual impairment.

[4] *The Power List 2016*, National Restaurant News, Jan. 19, 2016, http://www.nrn.com/nrn-50?page=8.

restaurant industry.  Eatsa has garnered nationwide press attention in outlets including *The New York Times*, *CNN*, *Forbes*, and *TIME* Magazine.

7.     Eatsa was funded by David Friedberg, a former Google and Monsanto executive who sold his farming insurance startup the Climate Corporation for approximately $1 billion in 2013.  Eatsa has continued to grow through venture capital funding.

8.     Eatsa's founders and funder are not new to the world of business or the obligations of businesses to comply with federal law.  Yet, when Eatsa opened its first location in New York City in December 2016, almost twenty-seven years after the ADA guaranteed Americans with disabilities full and equal access to places of public accommodation, including restaurants, Eatsa's design excluded and continues to exclude thousands of blind customers from the self-service dining experience it offers at its chain of restaurants.  Eatsa's failure to provide full and equal access to the benefits of its self-service restaurants violates Title III of the Americans with Disabilities Act and the New York City Human Rights Law ("NYCHRL").

9.     Access to technology holds great promise for improving inclusion of blind people throughout society and expanding their independence.  Ensuring that technology like that used by Eatsa is fully accessible to blind people is readily achievable.  However, rather than comply with its affirmative obligations under federal and city law to make its services accessible, Eatsa has ignored the needs of thousands of potential blind customers.

## **<u>JURISDICTION</u>**

10.     This is an action for declaratory and injunctive relief, brought pursuant to Title III of the ADA, 42 U.S.C. § 12181, *et seq.* and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

11.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and supplemental jurisdiction over the NYCHRL claim pursuant to 28 U.S.C. § 1367.

## VENUE

12.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District. The Defendant is doing business within this District by operating two restaurants in Manhattan.

13.     The Defendant is subject to personal jurisdiction in this District. The Defendant has committed and is committing the acts alleged herein in the Southern District of New York, has and is violating the rights of customers in the Southern District of New York, and has and is causing injury to customers within the Southern District of New York.  A substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.

14.     Plaintiff American Council of the Blind ("ACB") has members who reside in, work in, and visit the Southern District of New York.  Plaintiff Michael Godino regularly visits the Southern District of New York for work and social engagements.

## PARTIES

15.     Plaintiff Michael Godino is a resident of Long Island, New York who is legally blind and has low vision.  He is a member of the ACB. When Mr. Godino visited one of Defendant's restaurants in New York City, he was unable to use the self-service kiosk to browse the menu, check prices, select ingredients, review his order, or pay because the device was inaccessible.  He was also unable to independently pick up his food because the food-delivery system was inaccessible.  As a result of this experience, and because Mr. Godino is aware that these features and methods are the foundation of Eatsa's self-service business model, he is deterred from visiting Eatsa restaurants.

4

16.     Plaintiff ACB was founded in 1961 and is a national membership organization with blind members across the nation and over seventy state chapters and special interest affiliates.  The ACB is a Section 501(c)(3) non-profit corporation duly organized under the laws of Washington, DC and headquartered in Alexandria, Virginia.  The ACB strives to increase the independence, security, equality of opportunity, and quality of life for all blind and visually-impaired people.  ACB and its affiliates have been at the forefront of the creation of policies that have shaped the opportunities that are now available to people with disabilities in the United States.

17.     The ACB was actively involved in the development of the principles and policies that became a part of the regulations implementing Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act, and the 21st Century Communications and Video Accessibility Act of 2010.  The ACB's efforts have led to the introduction of auditory stop announcements on public transportation, accessible pedestrian signals, accessible voting machines, and businesses providing accessible credit- and debit-card processing devices so that people who are blind may conduct their business independently and privately.  The foundation of the ACB's work is its belief that it is the right of every blind person to be included in society.  The ACB litigates on behalf of its blind and visually impaired members who live in, work in, or visit New York City and will be denied the full and equal enjoyment of Defendant's restaurants.

18.     Defendant Keenwawa, Inc., doing business as Eatsa, owns and operates a chain of fast-casual vegetarian restaurants in New York City, California, and Washington, DC.  Keenwawa was incorporated in 2013 and is based in San Francisco, California. Keenwawa operates two Eatsa locations in midtown Manhattan.

**CLASS ACTION ALLEGATIONS**

5

19.     Plaintiffs seek certification of the following class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: all blind persons who have been or are being denied access to the benefits and services provided at Eatsa restaurants and via the Eatsa application in New York City.

20.     The persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

21.     This case arises out of Defendant's common policy and practice of denying blind persons access to the services, facilities, privileges, advantages, or accommodations they provide at their restaurants and via Eatsa's self-service technology since all ordering and food-delivery systems have a common design that is inaccessible to blind persons.  Further, due to Defendant's policies and practices of failing to remove access barriers, blind persons have been and are being denied full and equal access to the services, facilities, privileges, advantages, and accommodations of Defendant's mobile application and its restaurants in New York City.

22.     This case involves common questions of law and fact affecting the parties to be represented in that they all are blind and have been or are being denied their civil rights to full and equal access to, and use and enjoyment of the same set of accommodations, advantages, facilities, privileges, and services provided at Eatsa restaurants and via the Eatsa application, due to the lack of accessible features, as required by law for persons with disabilities.

23.     The claims of the named Plaintiff are typical of those of the class.

24.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the class. Plaintiffs have retained and are represented by counsel competent and

experienced in complex class action litigation, including class actions brought under the ADA and New York City law requiring full and equal access for people with disabilities.

25.     Class certification of the claims is appropriate pursuant to rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant has acted or refused to act on grounds generally applicable to the class, making both declaratory and injunctive relief appropriate with respect to Plaintiffs and the class as a whole.

26.     References to Plaintiffs shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## FACTUAL ALLEGATIONS

27.     Eatsa operates a chain of fast-casual restaurants in New York City, California, and Washington, DC.  Eatsa restaurants employ neither waiters nor cashiers. Instead, patrons order from an app on their cellphone or at an in-store iPad kiosk.

28.     Eatsa's in-store kiosks consist of Apple iPad devices mounted on a stand that encloses the iPad so that only the screen is visible.  Sighted customers must swipe a credit or debit card alongside the kiosk in order to access the Eatsa menu. Sighted customers can then use the kiosk's iPad to browse the menu, design a customized Eatsa quinoa bowl, submit an order, request customer assistance, pay, and enter an email address for a receipt.

29.     Sighted customers using the Android or iOS app can view locations and hours of operation, select a location where they would like to place an order, browse the Eatsa menu, enter payment information, enter an email address for receipts, access order history, and place an order for pick-up in store.

30.     Once a customer has placed an order, either in-store or via the app, his or her name appears visually on a screen in the restaurant next to a wall of food-delivery cubbies. After

a short time, the customer's name lights up and a number appears next to the name.  This number corresponds with a number displayed visually on the door of a cubby.  When the screen shows that the meal is ready for pick-up, the LCD screen on the cubby with the corresponding number changes color before displaying the customer's name on the face of the cubby.  Finally, the customer taps a particular corner of the cubby and it opens, revealing the customer's food and drink order.

31.     This entire process is silent, and all required information is displayed visually. There are no available audio features on the kiosks, the display screen, or the food pick-up cubbies.  As a result, Eatsa's ordering and food-delivery process is entirely inaccessible to blind customers.

32.     Blind customers who visit Eatsa must rely on sighted assistance with each step of the process.  This denies blind customers the ability to independently access Eatsa restaurants. Unlike sighted customers, blind customers would have to rely on someone to verbally list approximately seventy ingredients in order to access the full Eatsa menu.

33.     Eatsa restaurants appear to have few employees. In Plaintiffs' experience, Eatsa restaurant locations sometimes have only 1 or 2 employees in the public areas of each restaurant at any given time.  If an Eatsa employee is not present or available, a sighted customer may request assistance through the iPad kiosk.  However, this feature, like the other features on the self-service kiosks, is inaccessible to blind customers.

34.     The iPad tablet systems Eatsa uses as the base hardware for its self-service kiosks may have Apple "VoiceOver" technology that could likely be configured to provide audio for blind customers.  However, Eatsa has designed the kiosks so that customers using them cannot access "VoiceOver" technology, if it exists on the tablet, or any other audio output.

35.     Eatsa's mobile application does not utilize text-to-speech features that would allow blind customers to use it independently, despite the fact that such features are typically built into the operating systems for the Apple and Android devices used with the application. Eatsa has designed its mobile application so that it is not compatible with these accessibility features, thereby denying blind customers the benefits it offers sighted customers through the mobile application.

36.     At the core of Eatsa's design concept is its promise that Eatsa's ordering and pick-up systems allow for faster service, "engineered to get you in and out fast."  This promise is denied to blind customers who must wait for sighted assistance to order and retrieve their food. Thus, the benefits and services provided by Eatsa restaurants are only available to sighted customers and are not available to blind customers.

37.     Michael Godino is a resident of Long Island, New York who is legally blind and has low vision.  During one of his frequent visits to New York City in March 2017, Mr. Godino visited an Eatsa restaurant located at 285 Madison Avenue.  He discovered that there was no way he could independently select, order, pay for, or pick up food at the restaurant due to both the lack of audio features and inability to enlarge the size of the text.

38.     The restaurant was mostly empty when Mr. Godino visited.  An employee was present to assist Mr. Godino, but he did not know if an employee was always present and available, particularly if he visited during the midtown lunch rush.  The employee assisted Mr. Godino with placing and paying for his order, and then informed him when his order was ready. However, Mr. Godino was unable to read the instructions for opening the cubby in order to pick up his food.  He tapped on the cubby's face, but was unaware that opening the cubby requires

tapping a particular corner of the cubby's face, since that corner is only identified visually.  Mr. Godino had to seek the assistance of the Eatsa employee to help him open the cubby.

39.     Mr. Godino would like to return to Eatsa and to experience a fully self-service meal there.  However, he is deterred from doing so because Eatsa's self-service technology is inaccessible to him.

40.     Among ACB's members are not only blind persons in New York City, but many blind tourists, business people, students, and teachers who visit these destinations every year. Many blind ACB members, including Plaintiff Godino, wish to access Defendant's restaurants on an equal and independent basis as sighted customers.

41.     Eatsa is aware of means to make its restaurants accessible to blind customers. Nevertheless, Eatsa has refused to provide accessible technology in its restaurants.

42.     Eatsa provides accommodations, advantages, privileges, and services via its inaccessible ordering and food-delivery systems at two locations within this District.

43.     Eatsa thus provides accommodations, advantages, facilities, privileges, and services to customers that contain access barriers.  These barriers deny full and equal access to Plaintiffs, who would otherwise dine at Eatsa restaurants and who would otherwise be able to fully and equally enjoy the benefits and services of Eatsa restaurants within this District.

## FIRST CAUSE OF ACTION

*Disability-Based Discrimination  In Violation of Title III of the Americans with Disabilities Act*

44.     Title III of the Americans with Disabilities Act prohibits discrimination against people with disabilities "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person

who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

45.     Defendant Eatsa's restaurants are places of public accommodation. 42 U.S.C. § 12181(7)(B) ("public accommodation" includes "a restaurant, bar, or other establishment serving food or drink"); *see also* 28 C.F.R. § 36.104.

46.     The automated, self-service ordering, payment, and food-pick up systems Eatsa offers sighted customers at its restaurants and via its mobile applications are benefits, services, privileges, advantages, and accommodations of its restaurants.

47.     By denying blind customers full and equal access to its self-service ordering, payment, and food pick-up systems, Defendant Eatsa has discriminated and continues to discriminate against Plaintiff Godino and the proposed class on the basis of their visual disabilities by denying them the opportunity "to participate in or benefit from [Eatsa's] goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(1)(A)(i).

48.     Defendant Eatsa has discriminated and continues to discriminate against Plaintiff Godino and the proposed class on the basis of their visual disabilities by affording them the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of the establishment owned, operated, or contracted for usage by Defendant Eatsa at Eatsa restaurants in a manner that is not equal to that afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

49.     Defendant Eatsa has discriminated and continues to discriminate against Plaintiff Godino and the proposed class on the basis of their visual disabilities by failing to modify their policies, procedures, and practices in a reasonable manner, when such modifications are necessary to ensure equal access for individuals with disabilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

11

50.     Defendant Eatsa has discriminated and continues to discriminate against Plaintiff Godino and the proposed class on the basis of their visual disabilities by failing to provide necessary auxiliary aids and services at facilities where provision of such auxiliary aids and services does not create an undue burden and would not fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation offered by Defendant Eatsa. 42 U.S.C. § 12182(b)(2)(A)(iii).

51.     Plaintiff Michael Godino is an individual with a disability within the meaning of the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36.  He has an impairment that substantially limits the major life activity of seeing. 42 U.S.C. § 12102(2)(A); *see also* 28 C.F.R. § 36.104.

52.     Organizational Plaintiff ACB has members who are individuals with disabilities within the meaning of the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36. Each has an impairment that substantially limits the major life activity of seeing. 42 U.S.C. § 12102(2)(A); 28 C.F.R. § 36.104.

53.     Defendant Eatsa's conduct constitutes ongoing and continuous violations of the ADA.  Unless enjoined from doing so, Defendant will continue to violate the law.  Through its conduct, Defendant has caused and will continue to cause Plaintiffs immediate and irreparable injury.

54.     Plaintiffs are entitled to declaratory and injunctive relief and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION

*Disability-Based Discrimination  In Violation of the New York City Human Rights Law*

55.     Plaintiffs re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

56.     The New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107(4)(a) provides, "[i]t shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived . . . disability . . . of any person directly or indirectly, to refuse, withhold from or deny to such person the accommodations, advantages, facilities, or privileges thereof . . . ."

57.     The term "person" in the NYCHRL "includes one or more, natural persons, proprietorships partnerships, associations, group associations, organizations, governmental bodies or agencies, corporations  . . . ." N.Y.C. Admin. Code § 8-102(a).  Eatsa is a corporation and thus is a person within the meaning of the NYCHRL.

58.     The NYCHRL defines the term "place or provider of public accommodation" to include "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kinds are extended, offered, sold or otherwise made available." N.Y.C. Admin. Code § 8-102(9). As such, Eatsa restaurants are a public accommodation as they are a service, accommodation, advantage or privilege offered to the general public and thus fall within the meaning of N.Y.C. Admin. Code § 8-102(9).

59.     Defendant, as a person under the statute, acts as the "owner" and "manager" of Eatsa restaurants.   In so doing, Eatsa directly denies to persons with disabilities the

accommodations, advantages, facilities or privileges of Eatsa restaurants for the reasons set forth herein.

60.     The NYCHRL additionally requires that any person prohibited from discriminating under Section 8-107 on the basis of disability "shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15).  The term "covered entity" is defined as a person required to comply with any provision of Section 8-107, which includes Defendant under N.Y.C. Admin. Code § 8-102(1).

61.     Eatsa, as a covered entity, must make the reasonable accommodations necessary to allow persons with disabilities the opportunity to enjoy the right of benefiting from Eatsa restaurants pursuant to N.Y.C. Admin. Code § 8-107(15).  Defendant has made inadequate or no reasonable accommodations to allow blind persons the opportunity to enjoy the right of benefiting from Eatsa restaurants.

62.     As a direct and proximate result of Defendant's violations of the NYCHRL, Plaintiffs have been injured as set forth herein.

63.     Defendant's conduct constitutes an ongoing and continuous violation of the NYCHRL and, unless restrained from doing so, Defendant will continue to violate said law. This conduct, unless enjoined, will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.   Plaintiffs will suffer irreparable harm in that they will continue to be discriminated against and denied the accommodations, advantages, facilities or privileges of Eatsa as well as reasonable accommodations which would provide them the opportunity to

benefit from Eatsa restaurants.   Consequently, Plaintiffs are entitled to injunctive relief and reasonable attorneys' fees and costs.

## THIRD CAUSE OF ACTION

*Declaratory Relief*

64.    Plaintiffs incorporate by reference the foregoing allegations as if set forth fully herein.

65.    An actual controversy has arisen and now exists between the parties in that Plaintiffs contend, and are informed and believe that Defendant denies, that Defendant, by providing benefits and services to sighted customers that are inaccessible to blind customers at their restaurants in New York City, fail to comply with applicable laws including, but not limited to Title III of the ADA, 42 U.S.C. §§ 12181, *et seq.* and the New York City Human Rights Law, prohibiting discrimination against the blind.

66.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

67.    Declare that the actions and inactions described herein violate the rights of Plaintiffs and the class under the ADA and NYCHRL;

68.    Issue an order requiring that Defendant takes the necessary steps to ensure that the food ordering and delivery systems within Eatsa restaurants comply with the ADA and NYCHRL;

69.    Issue an order enjoining Defendant from engaging in the unlawful conduct complained herein;

70.    Award reasonable attorneys' fees and costs; and

71.    Grant such other and further relief as the Court deems just and proper.


Dated:  March 23, 2017                Respectfully submitted,
         New York, New York
                                      DISABILITY RIGHTS ADVOCATES

                                      _____
                                      Michelle Caiola
                                      Rebecca C. Serbin
                                      DISABILITY RIGHTS ADVOCATES
                                      675 Third Avenue, Suite 2216
                                      New York, NY 10017
                                      Tel:  (212) 644-8644
                                      Fax:  (212) 644-8636